TAB C

Department of Health and Human Services

## OFFICE OF
## INSPECTOR GENERAL

# SELF-DECLARATION OF U.S. CITIZENSHIP FOR MEDICAID



Daniel R. Levinson
Inspector General

July 2005
OEI-02-03-00190

# Office of Inspector General

http://oig.hhs.gov

The mission of the Office of Inspector General (OIG), as mandated by Public Law 95-452, as amended, is to protect the integrity of the Department of Health and Human Services (HHS) programs, as well as the health and welfare of beneficiaries served by those programs. This statutory mission is carried out through a nationwide network of audits, investigations, and inspections conducted by the following operating components:

## Office of Audit Services

The OIG's Office of Audit Services (OAS) provides all auditing services for HHS, either by conducting audits with its own audit resources or by overseeing audit work done by others. Audits examine the performance of HHS programs and/or its grantees and contractors in carrying out their respective responsibilities and are intended to provide independent assessments of HHS programs and operations in order to reduce waste, abuse, and mismanagement and to promote economy and efficiency throughout the department.

## Office of Evaluation and Inspections

The OIG's Office of Evaluation and Inspections (OEI) conducts short-term management and program evaluations (called inspections) that focus on issues of concern to the department, the Congress, and the public. The findings and recommendations contained in the inspections reports generate rapid, accurate, and up-to-date information on the efficiency, vulnerability, and effectiveness of departmental programs. The OEI also oversees State Medicaid fraud control units, which investigate and prosecute fraud and patient abuse in the Medicaid program.

## Office of Investigations

The OIG's Office of Investigations (OI) conducts criminal, civil, and administrative investigations of allegations of wrongdoing in HHS programs or to HHS beneficiaries and of unjust enrichment by providers. The investigative efforts of OI lead to criminal convictions, administrative sanctions, or civil monetary penalties.

## Office of Counsel to the Inspector General

The Office of Counsel to the Inspector General (OCIG) provides general legal services to the OIG, rendering advice and opinions on HHS programs and operations and providing all legal support in OIG's internal operations. The OCIG imposes program exclusions and civil monetary penalties on health care providers and litigates those actions within the department. The OCIG also represents OIG in the global settlement of cases arising under the Civil False Claims Act, develops and monitors corporate integrity agreements, develops compliance program guidances, renders advisory opinions on OIG sanctions to the health care community, and issues fraud alerts and other industry guidance.

 **E X E C U T I V E   S U M M A R Y**

## OBJECTIVES

Our objectives were to determine the extent to which States allow self-declaration of U.S. citizenship for Medicaid and related programs and to identify potential vulnerabilities, if any, associated with quality control activities and evidence used to document citizenship.

## BACKGROUND

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 restricts eligibility for Medicaid to U.S. citizens, nationals of the United States, or qualified aliens. Since 1986, verification of U.S. citizenship for purposes of Medicaid eligibility has been governed by section 1137(d) of the Social Security Act (the Act). The Act requires "a declaration in writing, under penalty of perjury . . . stating whether the individual is a citizen or national of the United States." Pursuant to the Act, the Centers for Medicare & Medicaid Services (CMS) allows, but does not require, States to accept self-declaration of citizenship without requiring submission of additional documentary evidence. In September 2002, CMS planned to issue a final rule that would permit States to continue using self-declarations of citizenship for Medicaid eligibility.[1] At that time, OIG agreed to conduct an inspection on the extent to which States allow self-declaration. Subsequently, CMS withdrew the proposed rule. However, OIG completed the inspection because of its potential value in the administration of the program.

In recent years, CMS has encouraged self-declaration in an effort to simplify and accelerate the Medicaid application process.[2] While the policy to allow applicants to self-declare citizenship can result in rapid enrollment, it can also result in inaccurate eligibility determinations for applicants who provide false citizenship statements. As such, there are inherent challenges in trying to provide Medicaid benefits expeditiously while still ensuring the accuracy of eligibility determinations. In a 2001 pamphlet, CMS provided information on how to maintain program integrity while attempting to simplify the

---

[1] Centers for Medicare & Medicaid Services, "Medicaid Program: Self-Declaration of Citizenship," CMS-2085-P, Sept. 12, 2002.

[2] Centers for Medicare & Medicaid Services, "Continuing the Progress: Enrolling and Retaining Low-Income Families and Children in Health Care Coverage," Pub. No. 11000, Aug. 2001.

application process. These strategies include verifying the accuracy of citizenship statements against other nonapplicant sources, such as State vital statistics databases, and/or conducting posteligibility-focused reviews.[3]

For this inspection, we gathered information from State Medicaid directors and their staff responsible for quality control activities. Additionally, we surveyed State Temporary Assistance for Needy Families (TANF) directors, State foster care directors, and Social Security Administration (SSA) officials.

## FINDINGS

**Forty-seven States allow self-declaration of U.S. citizenship for Medicaid; nearly all of these require evidence if statements seem questionable.** Pursuant to Federal policy, States may accept a signed declaration as proof of U.S. citizenship from applicants seeking Medicaid benefits. Currently, 40 Medicaid directors report that their State allows self-declaration of citizenship. An additional seven report that self-declaration is sometimes allowed. The four remaining directors report that self-declaration is not permitted in their State. These States are Montana, New Hampshire, New York, and Texas.

Forty-four of the forty-seven States that allow or sometimes allow self-declaration have "prudent person policies" which require evidence of citizenship if statements seem questionable to eligibility staff. Thirty-two of these have written prudent person policies, and the remaining 12 have unwritten, informal policies requiring documentation for questionable statements.

**Twenty-seven States do not verify the accuracy of any U.S. citizenship statements as part of their posteligibility quality control activities.** In fiscal year 2003, 27 of the 47 States that allow self-declaration did not conduct quality control activities that included verification of statements of U.S. citizenship. Of the 20 States that did review statements, 9 did so for a nonrepresentative sample of the entire Medicaid population. Consequently, some groups that could pose vulnerability to Medicaid integrity were not included in the review sample.

---

[3] Centers for Medicare & Medicaid Services, "Continuing the Progress: Enrolling and Retaining Low-Income Families and Children in Health Care Coverage," Pub. No. 11000, Aug. 2001.

**Some States use types of evidence that are not accepted by CMS or SSA to document citizenship for Medicaid.** As reported earlier, seven States sometimes allow and four States do not allow Medicaid applicants to self-declare citizenship. Of these 11 States, 4 use types of evidence to document citizenship that are not accepted by CMS or SSA. Furthermore, 13 of the 20 States that report conducting quality control to verify statements of U.S. citizenship use types of evidence that are not accepted by CMS or SSA, such as school records, family Bibles, voter registration records, and marriage licenses.

**Medicaid-related programs are more likely to verify citizenship; their verifications may be a useful resource for Medicaid.** SSA states that all applicants must provide documentary evidence of U.S. citizenship in order to receive a Social Security number or qualify for Supplemental Security Income (SSI) benefits. Forty-two of fifty-one foster care directors report that staff document U.S. citizenship when determining eligibility for Title IV-E foster care maintenance payments. Twenty-seven of fifty-one TANF directors report documenting or sometimes documenting citizenship for purposes of eligibility.

In the majority of instances, we found that these Medicaid-related programs draw on evidence accepted by CMS or SSA to document statements of U.S. citizenship. These citizenship verifications may be a useful resource for Medicaid.

## RECOMMENDATIONS

We recognize that there are challenges in providing Medicaid benefits expeditiously while ensuring the accuracy of eligibility determinations. By their nature, self-declaration policies have inherent vulnerabilities in that they can allow applicants to provide false statements of citizenship. As such, it is vital to have protections in place to prevent such practices.

Based on the descriptive information we collected from States, we conclude that existing safeguards at the point of entry into Medicaid and during posteligibility quality control could allow false statements of citizenship to go undetected. Below are three recommendations for improving safeguards:

- CMS should strengthen posteligibility quality controls in States that allow self-declaration.

- CMS should issue a complete list of evidence that States may reference when determining eligibility.

- CMS should explore allowing State Medicaid staff to use citizenship verifications from other Medicaid-related programs as an additional resource.

## AGENCY COMMENTS

CMS concurred with our recommendations. The agency further commented that it has already taken steps to improve safeguards to prevent applicants from providing false statements of citizenship. The full text of CMS's comments is included in Appendix D.

We note several issues with CMS's current efforts. Specifically, CMS explained that, pursuant to Federal regulations, States must verify statements of citizenship for sampled active cases as part of their posteligibility quality control procedures. We reiterate that this regulation applies only to States that operate traditional quality control. States that operate under a pilot or a section 1115 waiver with a quality control component are not required to verify all elements of eligibility, including statements of citizenship, as part of their posteligibility case file review.

CMS also commented that States choosing to accept self-declaration of citizenship need to have systems in place for some type of posteligiblity check to ensure that the self-declaration procedure is reliable. CMS stated that it is taking steps to do this by requiring a review of the accuracy of eligibility determinations as part of the Payment Error Rate Measurement (PERM) project. Currently, the Office of Management and Budget is working with CMS to define the scope of the PERM project. As of June, no decision has been made regarding the inclusion of errors related to Medicaid eligibility determinations.

# ► T A B L E   O F   C O N T E N T S

EXECUTIVE SUMMARY ........................................... i

INTRODUCTION ................................................ 1

FINDINGS... ................................................. 9

    States allowing self-declaration of citizenship ................. 9

    Posteligibility quality control activities........................ 11

    Forms of evidence used to document citizenship............... 14

    Practices in Medicaid-related programs ...................... 15

RECOMMENDATIONS ........................................ 18

APPENDIXES .............................................. 20

    A: Evidence Accepted to Document Statements of Citizenship .. 20

    B: Medicaid Eligibility Quality Controls in States Allowing

       Self-Declaration.......................................... 22

    C: Related Program Policies on Self-Declaration............... 24

    D: Agency Comments ....................................... 26

ACKNOWLEDGMENTS........................................ 29

 **I N T R O D U C T I O N**

## OBJECTIVES

Our objectives were to determine the extent to which States allow self-declaration of U.S. citizenship for Medicaid and related programs and to identify potential vulnerabilities, if any, associated with quality control activities and evidence used to document citizenship.

## BACKGROUND

Title XIX of the Social Security Act (the Act) establishes Medicaid as a jointly funded, Federal-State health insurance program. To qualify for the full range of Medicaid benefits provided under a State plan, an applicant must be either a citizen or a national of the United States or a qualified alien.[4] Since 1986, verification of U.S. citizenship for purposes of Medicaid eligibility has been governed by section 1137(d) of the Act, which requires "a declaration in writing, under penalty of perjury . . . stating whether the individual is a citizen or national of the United States."[5] Pursuant to the Act, the Centers for Medicare & Medicaid Services (CMS) allows, but does not require, States to accept self-declaration of citizenship without requiring submission of additional documentary evidence. In September 2002, CMS planned to issue a final rule that would permit States to continue using self-declarations of citizenship for Medicaid eligibility.[6] At that time, OIG agreed to conduct an inspection on the extent to which States allow self-declaration. Subsequently, CMS withdrew the proposed rule. However, OIG completed its inspection because of its potential value in the administration of the program.

In recent years, CMS has encouraged self-declaration in an effort to simplify and accelerate the Medicaid application process.[7] While the policy to allow applicants to self-declare citizenship can result in rapid

---

[4] The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PL 104-193).

[5] Social Security Act § 1137 (d)(1)(A).

[6] Centers for Medicare & Medicaid Services, "Medicaid Program: Self-Declaration of Citizenship," CMS-2085-P, Sept. 12, 2002.

[7] Centers for Medicare & Medicaid Services, "Continuing the Progress: Enrolling and Retaining Low-Income Families and Children in Health Care Coverage," Pub. No. 11000, Aug. 2001.

enrollment, it can also result in inaccurate eligibility determinations for applicants who provide false citizenship statements. As such, there are inherent challenges in trying to provide Medicaid benefits expeditiously while still ensuring the accuracy of eligibility determinations. In a 2001 pamphlet, CMS provided information on how to maintain program integrity while attempting to simplify the application process. These strategies include verifying the accuracy of citizenship statements against other nonapplicant sources, such as State vital statistics databases, and/or conducting posteligibility-focused reviews.[8]

### Personal Responsibility and Work Opportunity Reconciliation Act of 1996

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) restricts eligibility for means-tested, federally funded public benefit programs to U.S. citizens or qualified aliens. This same legislation directed the Attorney General to establish verification guidance and procedures that States must follow in verifying the citizenship or immigration status of individuals applying for federally funded public benefit programs. The U.S. Department of Justice (DOJ) issued interim guidance in 1997 (62 FR 61344) and proposed regulations (63 FR 41662) in 1998. Final rules have not yet been issued.

The proposed DOJ regulations would require that both citizens and qualified aliens who are applying for Medicaid provide documentary evidence to verify their status. However, the proposed regulations would permit Federal benefit-granting agencies to establish alternative procedures for verifying citizenship. The agencies would be required (1) to publish regulations that provide for fair and nondiscriminatory procedures for verifying the citizenship of applicants for the benefit in question and (2) to obtain approval from the Attorney General for the alternative procedures.

CMS set forth its policy concerning self-declaration in a letter dated September 10, 1998, to State Medicaid directors. The letter explained that States may accept self-declaration of citizenship without

---

[8] Centers for Medicare & Medicaid Services, "Continuing the Progress: Enrolling and Retaining Low-Income Families and Children in Health Care Coverage," Pub. No. 11000, Aug. 2001.

requiring submission of additional documentary evidence. On January 11, 2001, CMS published final regulations (42 CFR 457.320(c)) that permit States to accept self-declaration of citizenship for applicants applying for coverage under the State Children's Health Insurance Program, a State-run insurance program intended to provide health care coverage to certain low-income families.[9]

### Evidence of Citizenship

The Department of Homeland Security (DHS), Bureau of Citizenship and Immigration Services is responsible for determining U.S. citizenship for persons in the United States.[10] Currently, DHS does not have a comprehensive list of acceptable evidence that may be used to document citizenship.

The CMS State Medicaid Manual contains two lists of evidence that may be accepted as proof of citizenship. These lists differ somewhat and neither is comprehensive. Examples of acceptable evidence listed in the manual include:

- Birth certificate,
- U.S. passport,
- Report of Birth Abroad of a Citizen of the United States, and
- Naturalization Certificate (INS Forms N-550 or N-570).[11]

In its operations manual, the Social Security Administration (SSA) provides additional sources of evidence that may be used to document U.S. citizenship for purposes of establishing eligibility for SSA-sponsored benefits.

See Appendix A for a listing of the evidence accepted by CMS or SSA to document U.S. citizenship.

### Medicaid Eligibility Quality Control

Federal regulations require State Medicaid agencies to conduct posteligibility quality control activities to "eliminate or substantially reduce dollar losses resulting from eligibility errors."[12] From 1978 to

---

[9] 66 FR 2490.
[10] Homeland Security Act of 2002 § 402(3).
[11] State Medicaid Manual, § 3212.3, "Methods of Documenting United States Citizenship."
[12] 42 CFR § 431.800.

1993, States were required to conduct "traditional" eligibility case reviews of the Medicaid-eligible population. As part of these traditional reviews, all States were required to review and verify elements such as citizenship and alienage, wage information, age, and residency. To verify information on citizenship, quality control staff were required to obtain documentation supporting the content of the declaration of citizenship.[13]

In 1994, CMS offered States three options for conducting Medicaid Eligibility Quality Control (MEQC). States could continue using traditional quality control, participate in a demonstration pilot program, or conduct quality control as part of a section 1115 waiver.[14] In fiscal year 2003, 39 States operated under a section 1115 waiver or an MEQC pilot.[15]

_MEQC pilots._ MEQC pilots allow States to develop innovative and targeted approaches for conducting quality control. Under pilots, States may tailor their programs to look at error-prone areas, high-dollar areas, or special populations. While operating under pilots, States are not required to conduct reviews of self-declaration of citizenship statements.

_Section 1115 waivers._ Under section 1115 waivers, States may allow certain kinds of deviations from their State Medicaid plans, including the expansion of eligibility for those who would otherwise not be eligible for the Medicaid program. Unless outlined in their contract with CMS, States operating under section 1115 waivers with quality control components are not required to conduct reviews of citizenship statements.

**Related Benefit Programs**
Other programs in which Medicaid recipients could potentially participate include Supplemental Security Income (SSI), Title IV-E foster care, and Temporary Assistance for Needy Families (TANF). We examined eligibility requirements and State policies and practices

---

[13] State Medicaid Manual, Chapter III, 7269.130.

[14] CMS Medicaid Quality Control Program, http://www.cms.hhs.gov/medicaid /meqc/mqcguid.asp, accessed Jan. 22, 2004.

[15] Centers for Medicare & Medicaid Services, "National Overview of Medicaid Eligibility Quality Control for 2003," May 9, 2003.

regarding self-declaration of U.S. citizenship for these related programs in an effort to identify a potential resource for Medicaid staff. Throughout this report, we refer to the SSI, foster care, and TANF programs as "Medicaid-related programs."

_SSI._ In general, States are required to provide Medicaid coverage to recipients of SSI. SSA requires that

> all Supplemental Security Income (SSI) applicants alleging U.S. citizenship must submit evidence. However, if an individual actually provided proof of his/her citizenship status in a prior claim for benefits from SSA, he/she will not have to resubmit that evidence.[16]

_Title IV-E foster care._ Section 471(21) of the Act requires States to provide Medicaid or equivalent health insurance coverage to children eligible to receive Title IV-E foster care program maintenance funds. For all children receiving Federal foster care maintenance payments, States are required to verify citizenship or immigration status.[17]

_TANF._ Similar to Federal requirements related to documenting U.S. citizenship for Medicaid, current Federal law does not impose any specific documentation requirements, other than a signed declaration of U.S. citizenship, for TANF applicants claiming to be U.S. citizens.[18]

## SCOPE

This inspection describes State practices to determine and document U.S. citizenship for Medicaid and related program eligibility, as well as State quality control activities. It does not identify the extent to which current Medicaid beneficiaries are ineligible on the basis of their citizenship. In addition, this inspection does not examine the extent to which eligible individuals fail to apply for Medicaid in States that require proof of U.S. citizenship as a condition of eligibility.

---

[16] The SSA Program Operations Manual System, "Special Procedure for Establishing U.S. Citizenship for SSI Benefits," GN 00303.350, May 1995.

[17] "ACF Child Welfare Policy Manual -- WC Policy Database -- Policy Questions & Answers," Question 9, June 4, 2003.

[18] Social Security Act § 1137 (d)(1)(A).

## METHODOLOGY

To identify States that allow self-declaration of U.S. citizenship for Medicaid and related programs, we gathered information from State Medicaid Directors and their staff responsible for quality control, as well as SSA officials, State foster care directors, and State TANF directors.

The data presented in this report were collected from State representatives in the 50 States and the District of Columbia. For reporting purposes, we refer to the District of Columbia as a State throughout our analysis.

### State Medicaid Directors

To obtain descriptive information on all States' practices with regard to self-declaration of U.S. citizenship, we administered telephone surveys to all 51 State Medicaid directors and their staff. We asked directors about their States' self-declaration practices and whether their State has a policy instructing eligibility staff to obtain additional verification when applicants' statements appear incomplete, unclear, or inconsistent, which some States refer to as a "prudent person policy." We also asked directors to submit any evaluations or audits that were conducted within the last 5 years that looked at self-declaration of U.S. citizenship for Medicaid. We were able to speak with all directors during June and July 2003, giving us an overall response rate of 100 percent.

### MEQC Supervisors/ Medicaid Directors

We administered another telephone survey to the 47 MEQC supervisors and/or Medicaid directors in States that permit self-declaration of U.S. citizenship during December 2003. We spoke with all 47 directors and/or supervisors in these States. Survey questions for the 47 Medicaid directors and/or supervisors focused on:

- Whether MEQC was conducted in a traditional format, under a section 1115 waiver, or under an MEQC pilot format during fiscal year 2003;

- The extent to which citizenship statements were checked during quality control activities;

- The types of documentation used to prove statements of U.S. citizenship; and

- Whether, as part of the States' quality control practices, self-declaration of U.S. citizenship was included for review.

For States operating a traditional MEQC program, we asked if staff conducted the required activities, as outlined in the CMS State Medicaid Manual.

### CMS Representatives

We conducted interviews with representatives from the Medicaid State Operations group at CMS. These interviews focused on how States are permitted to conduct MEQC activities.

### Social Security Administration Management Staff

In January 2004, we conducted a telephone interview with management staff at SSA to determine if statements of U.S. citizenship are documented during and throughout the Social Security enumeration process and for SSI benefits. We also asked questions on the extent to which citizenship data collected for SSA program eligibility are shared with State Medicaid agencies.

### Foster Care Directors

We conducted a Web-based, self-administered survey of State foster care directors. All 51 directors responded to our survey during October 2003. The survey requested information on whether foster care staff document a child's U.S. citizenship when determining eligibility for federally funded foster care maintenance payments.

### TANF Directors

We conducted a self-administered, Web-based survey of State TANF directors. All 51 directors responded to our survey during September 2003. The survey requested States' policies on self-declaration of U.S. citizenship to qualify for TANF benefits.

### Citizenship Evidence Accepted by CMS or SSA

As mentioned earlier, DHS, the agency responsible for determining citizenship for a person in the United States, does not currently have a comprehensive reference list of acceptable evidence. In the absence of an official document from DHS, we developed a comprehensive list of "accepted evidence" by combining the evidence accepted by CMS[19] or

---

[19] State Medicaid Manual, §§ 3212.3 and 7269.130.

INTRODUCTION

SSA[20] for purposes of documenting citizenship for program eligibility.
We then compared the forms of evidence States report using to
document U.S. citizenship for Medicaid and related programs with this
comprehensive list.  See Appendix A for a complete listing of accepted
evidence used during our analysis.

We conducted this inspection in accordance with the "Quality
Standards for Inspections" issued by the President's Council on
Integrity and Efficiency.

---

[20] The SSA Program Operations Manual System, "Establishing U.S. Citizenship for all SSA
Programs," GN 00303.300, July 12, 2002.

## ▶ F I N D I N G S

**Forty-seven States allow self-declaration of U.S. citizenship for Medicaid; nearly all of these require evidence if statements seem questionable**

Pursuant to the Act, States may accept a signed declaration as proof of U.S. citizenship from applicants seeking Medicaid benefits.[21] Forty-seven of fifty-one Medicaid directors report that their State allows or sometimes allows self-declaration of U.S. citizenship. For the four remaining States (Montana, New Hampshire, New York, and Texas) directors report that applicants must submit documentary evidence to verify U.S. citizenship statements. Table 1 displays each State's policy on self-declaration of U.S. citizenship for Medicaid.

Seven directors report that although their State sometimes allows applicants to self-declare U.S. citizenship, documentation is required under some circumstances. Four of these directors indicate that documentation is required for the aged, blind, and disabled populations. Other circumstances in which States sometimes ask for documentation include when the applicant was born outside of the United States or if information related to the applicant's place of birth does not exist in the State's vital statistics database.

With the exception of one State that verifies self-declaration statements through its vital statistics database, no other States volunteer that they obtain verification of citizenship statements from other nonapplicant sources. Further, none of the directors volunteer that eligibility staff currently utilize citizenship verification information from related programs such as TANF or foster care.

**Nearly all States that allow self-declaration require evidence of U.S. citizenship if statements seem questionable during the eligibility process**
Forty-four of the forty-seven States that permit or sometimes permit self-declaration report that they have a written or informal "prudent person policy" requiring documentation if the statements of the applicant seem questionable. Of these, 32 States have a written policy to guide staff in these situations. An example of a written policy instructs Medicaid eligibility staff that

---

[21] CMS letter to State Medicaid directors, September 10, 1998.

F I N D I N G S

## Table 1: State Policies on Self-Declaration of Citizenship for Medicaid

| State | Allowed | Sometimes Allowed | Not Allowed | Prudent Person Policy | State | Allowed | Sometimes Allowed | Not Allowed | Prudent Person Policy |
|---|---|---|---|---|---|---|---|---|---|
| AL | ✓ | | | Written | NV | ✓ | | | Written |
| AK | | ✓ | | Written | NH | | | ✓ | NA |
| AZ | ✓ | | | Written | NJ | | ✓ | | Written |
| AR | ✓ | | | Informal | NM | ✓ | | | Written |
| CA | | ✓ | | Written | NY | | | ✓ | NA |
| CO | ✓ | | | None | NC | ✓ | | | Written |
| CT | ✓ | | | Written | ND | ✓ | | | Written |
| DE | ✓ | | | Informal | OH | ✓ | | | Written |
| DC | ✓ | | | None | OK | ✓ | | | Written |
| FL | | ✓ | | Written | OR | ✓ | | | Written |
| GA | ✓ | | | Written | PA | ✓ | | | Written |
| HI | ✓ | | | Informal | RI | | ✓ | | Informal |
| ID | ✓ | | | Informal | SC | ✓ | | | Written |
| IL | ✓ | | | Informal | SD | ✓ | | | Informal |
| IN | | ✓ | | Informal | TN | ✓ | | | Informal |
| IA | ✓ | | | Written | TX | | | ✓ | NA |
| KS | ✓ | | | Written | UT | ✓ | | | Written |
| KY | ✓ | | | Written | VT | ✓ | | | Written |
| LA | ✓ | | | Written | VA | ✓ | | | Informal |
| ME | ✓ | | | Informal | WA | ✓ | | | Written |
| MD | ✓ | | | Written | WV | ✓ | | | Written |
| MA | ✓ | | | None | WI | ✓ | | | Written |
| MI | ✓ | | | Written | WY | ✓ | | | Written |
| MN | ✓ | | | Written | Totals | 40 | 7 | 4 | - |
| MS | | ✓ | | Written | Written | - | - | - | 32 |
| MO | ✓ | | | Informal | Informal | - | - | - | 12 |
| MT | | | ✓ | NA | None | - | - | - | 3 |
| NE | ✓ | | | Written | | | | | |

Source: OIG analysis of State policies on self-declaration of U.S. citizenship, 2004

FINDINGS

when statements of client are incomplete, unclear, or inconsistent, or when other circumstances in the particular case indicate to a prudent person that further inquiry must be made, the worker shall obtain additional verification before eligibility is determined.

The remaining 12 States have unwritten, informal prudent person policies requiring additional verification when eligibility staff deem statements questionable.

**Medicaid directors report they allow self-declaration to increase access and express concern about increased costs if the policy is prohibited**
We asked the 47 State Medicaid directors in States allowing self-declaration their reasons for not requiring evidence of U.S. citizenship. Twenty-five respondents say that they have been encouraged by CMS to simplify their application processes in order to reduce barriers to health care access. In addition, 17 respondents report that through their posteligibility quality control activities, they have not seen a problem with self-declaration of citizenship.

We asked what costs, if any, Medicaid applicants would incur if all were required to provide documentary evidence of U.S. citizenship. Twenty-eight of forty-seven directors report that it would delay eligibility determination. In addition, 25 directors comment that it would result in increased eligibility personnel costs. Twenty-one directors also report that it would be burdensome and/or expensive for applicants to obtain copies of birth certificates or other documentation.

**Twenty-seven States do not verify the accuracy of U.S. citizenship claims as part of their posteligibility quality control activities**    Federal regulations require State Medicaid agencies to conduct posteligibility quality control activities to "eliminate or substantially reduce dollar losses resulting from eligibility errors."[22] States may conduct MEQC activities in a traditional format, under an MEQC pilot format, or as part of a section 1115 waiver. In fiscal year 2003, 27 of the 47 States that allow self-declaration did not conduct quality control activities that included verification of statements of U.S. citizenship.

---

[22] 42 CFR § 431.800.

F I N D I N G S

Of the 20 States that did review statements of U.S. citizenship, 9 did so for a nonrepresentative sample of the entire Medicaid population. Consequently, some groups that may pose vulnerability to Medicaid integrity were not included in the sample of applications that were reviewed. See Appendix B for a list of States' quality control activities.

**Three States operating traditional MEQC programs do not conduct required quality control activities**

Under traditional MEQC, States are required to verify that sampled applicants are U.S. citizens. Three of the eleven States that operated a traditional MEQC program and allowed self-declaration in fiscal year 2003 did not conduct required eligibility quality control for U.S. citizenship. These States report that they did not collect documentary evidence to support statements of U.S. citizenship for sampled applicants. (See Table 2.)

| Table 2: Medicaid Quality Control on Self-Declaration of U.S. Citizenship by Type of MEQC Program | | | |
|---|---|---|---|
| **Type of MEQC Program** | **Does Not Conduct MEQC for Self-Declaration** | **Conducts MEQC for Self-Declaration** | **Total Number of States That Allow Self-Declaration** |
| Traditional | 3 | 8 | 11 |
| Pilot* | 20 | 8 | 28 |
| Waiver | 4 | 4 | 8 |
| **Overall total States** | **27** | **20** | **47** |

*In fiscal year 2003, Tennessee operated both an MEQC pilot and an 1115 waiver. We considered Tennessee a pilot program because it conducted MEQC activities under its pilot, which included the entire Medicaid population.

Source: OIG analysis of State MEQC practices, 2004

F I N D I N G S

**Twenty MEQC pilot States do not monitor self-declaration of U.S. citizenship**

While operating under an MEQC pilot, States may, but are not required to, conduct posteligibility reviews of self-declaration of citizenship statements. Twenty of the twenty-eight States that permit self-declaration of U.S. citizenship and operated under a pilot program in fiscal year 2003 did not obtain documentary evidence to support beneficiaries' statements of U.S. citizenship for any portion of their Medicaid population. Eight States conducted quality control on self-declarations of citizenship, but seven did so for a nonrepresentative sample which accounted for less than 8 percent of the Medicaid population. These samples did not include certain populations that may pose vulnerability to Medicaid integrity.

**Four section 1115 waiver States do not address self-declaration of U.S. citizenship**

While operating under a section 1115 waiver with a quality control component, a State may, but is not required to, conduct reviews of self-declaration of citizenship statements. Four of the eight States that allow Medicaid applicants to self-declare U.S. citizenship and operated under section 1115 waivers in fiscal year 2003 did not obtain and verify documentary evidence to support statements of U.S. citizenship. Of the four section 1115 waiver States that verify statements of U.S. citizenship for quality control purposes, two conducted MEQC for only a subset of the entire Medicaid population.

**Only one State reports conducting an audit looking at self-declaration of U.S. citizenship, and it found vulnerabilities**

We asked States for any quality control audits or evaluations that looked at self-declaration of citizenship. Only one State director provided an audit on this topic. This audit report found vulnerabilities related to the process of self-declaration of U.S. citizenship.

Specifically, the audit, conducted in January 2002 by the Secretary of the State of Oregon, found that the State provided full Medicaid benefits to 25 beneficiaries (of the sample of 812) who were noneligible noncitizens. The audit report concludes that there are potential risks involved in allowing applicants to self-declare their U.S. citizenship on mail-in applications, which do not allow workers to verify the accuracy of statements of U.S. citizenship. They estimate

F I N D I N G S

that the risk could result in an annual cost of about $2 million, based on a 1 percent estimate of noneligible noncitizens receiving Medicaid benefits.[23]

### Some States use types of evidence that are not accepted by CMS or SSA to document citizenship for Medicaid

**Four States use forms of evidence that are not accepted by CMS or SSA to document citizenship for initial Medicaid eligibility**

As reported earlier, seven States sometimes allow and four States do not allow Medicaid applicants to self-declare citizenship. Of these 11 States, 4 use types of evidence to document citizenship that are not accepted by CMS or SSA. Specifically, two States allow the use of a school record to document citizenship and two allow use of a family Bible as documentation.[24]

Seven of eleven States that sometimes allow or do not allow self-declaration report accepting documentation that is accepted by CMS or SSA. These include public birth records, U.S. passports, and naturalization certificates.

**Thirteen States use types of evidence that are not accepted by CMS or SSA to verify statements of U.S. citizenship for posteligibility quality control purposes**

Thirteen of the twenty States that report conducting quality control to verify statements of U.S. citizenship use forms of documentation that are not accepted by CMS or SSA. For example, 11 of these 13 States report using records of receipt of SSI to verify citizenship. While one of the primary sources included in the CMS State Medicaid Manual to verify citizenship and alienage declarations is "Record of receipt of

---

[23] Audit Report: "Department of Human Services Oregon Health Plan Eligibility Review," Report No. 2002-03, January 3, 2002, p. 1.

[24] According to section 7269.1 of the State Medicaid Manual, States may accept evidence of continuous residence in the United States prior to June 30, 1948. Among the records accepted to prove continuous residence are school records, a marriage license, a voter registration card, an insurance policy, military service records, and a Social Security number. The directors identified here did not report accepting documentation that was dated prior to June 30, 1948.

F I N D I N G S

SSI,"[25] in discussions with SSA, we found that verification of receipt of SSI does not guarantee that the Medicaid applicant or beneficiary is a U.S. citizen. Medicaid agencies must take the additional step of verifying the Alien/Refugee code in the State Data Exchange report files, which provide States with eligibility, payment, and demographic data relating to SSI recipients, to substantiate that evidence of U.S. citizenship was submitted for SSI eligibility purposes.

Other examples of documentation that is not accepted by CMS or SSA but which State Medicaid directors report using for quality control purposes are voter registrations, proof of Medicare Part A, school records, children's birth certificates to prove a parent's citizenship status, marriage licenses, and even other self-declaration statements.

**Medicaid-related programs are more likely to document citizenship; their verifications may be a useful resource for Medicaid**

Medicaid applicants may potentially participate in related programs such as SSI, foster care, and TANF. We found that these related programs are more likely than Medicaid to document citizenship and most often use evidence that is accepted by CMS or SSA to verify this status. These verifications may be a useful resource for Medicaid staff. Appendix C provides information on related programs' policies and use of documentation on a State-by-State basis.

**United States citizenship is always documented for enumeration and SSI**
The SSA officials report that all applicants must provide documentary evidence of U.S. citizenship or legal status in order to receive a Social Security number (enumeration) or to qualify for SSI benefits. In some cases, SSA's prior determination of citizenship is accepted as a means for documenting U.S. citizenship. However, SSA is currently reviewing this policy to ensure that it does not rely on inadequate documentation that was submitted for purposes of enumeration and SSI in prior years.

As indicated earlier, in discussions with SSA officials, we found that verification of receipt of SSI does not prove U.S. citizenship.

---

[25] It is important to note that this list does not distinguish between appropriate sources to verify U.S. citizenship versus appropriate sources to verify alienage.

Eligibility staff must take the additional step of verifying the
Alien/Refugee code in the State Data Exchange report files.

**Forty-two States document the citizenship status of children receiving Title
IV-E foster care benefits, as required by the Administration for Children and
Families**

The Administration for Children and Families requires that foster
care eligibility staff document U.S. citizenship status for purposes of
federally funded Title IV-E foster care maintenance payment
eligibility.[26]  Forty-two of fifty-one foster care directors report that
staff document U.S. citizenship when determining eligibility for
federally funded foster care maintenance.  Seven directors report that
staff sometimes document U.S. citizenship, and two say citizenship is
never documented.

Among the seven foster care directors who indicate that U.S.
citizenship is sometimes not documented, circumstances under which
no documentation occurs vary significantly.  Examples include "the
rare occurrence when a child falls under category 85, undocumented
alien emergency situation coverage" and "when a parent or other
reliable source reports a child is a citizen."

**Fifteen States document citizenship to determine TANF eligibility**

Similar to requirements for Medicaid, States may permit TANF
applicants to self-declare U.S. citizenship status as a condition of
eligibility.  Fifteen of fifty-one directors report verifying citizenship for
TANF eligibility.  Twelve directors report that it is their State's policy
to sometimes verify applicants' statements of U.S. citizenship.
Twenty-four TANF directors report that their State allows self-
declaration for eligibility purposes.

**Related programs commonly use types of evidence that are accepted by
CMS or SSA to verify citizenship**

Thirty-five of the forty-nine foster care directors that verify or
sometimes verify U.S. citizenship for children entering their State's
foster care program use types of evidence that are accepted by CMS or
SSA.  The remaining 14 include forms of documentation that are not
accepted.  Examples of these include green cards, Social Security

---

[26] "ACF Child Welfare Policy Manual – WC Policy Database – Policy Questions &
Answers," Question 9, June 4, 2003.

F I N D I N G S

numbers, citizenship declarations by parents/caregivers, military service records, and family Bibles.

Twenty of the twenty-seven States that verify or sometimes verify U.S. citizenship for TANF eligibility purposes use evidence accepted by CMS or SSA. The remaining States report using evidence that is not accepted, such as voter registration cards, school records, and/or family Bibles.

In the majority of instances, we found that related programs draw on evidence that is accepted by CMS or SSA to verify statements of citizenship. In States where related programs both verify statements of citizenship and use generally accepted documentation to do so, these verifications may be a useful resource for Medicaid.

 R E C O M M E N D A T I O N S

We recognize that there are challenges in providing Medicaid benefits expeditiously while ensuring the accuracy of eligibility determinations. By their nature, self-declaration policies have inherent vulnerabilities in that they can allow applicants to provide false statements of citizenship. As such, it is vital to have protections in place to prevent such practices.

Based on the descriptive information we collected from States, we conclude that existing safeguards at the point of entry into Medicaid and during posteligibility quality control could allow false statements of citizenship to go undetected. Below are three recommendations for improving safeguards:

**CMS should strengthen posteligibility quality controls in States that allow self-declaration**

Currently, 47 States allow self-declaration of citizenship for Medicaid. Over half of these never verify citizenship statements as part of their posteligibility quality control procedures. In States that do check statements, most do so for a subset of the entire Medicaid population. More examinations are needed to determine if there are problems resulting from this policy. Therefore, CMS should encourage States that allow self-declaration of citizenship to conduct reviews on the accuracy of these statements. Findings from these reviews could then be used to determine the extent to which this policy results in inaccurate eligibility determinations.

**CMS should issue a complete list of evidence that States may reference when determining eligibility**

Four of the eleven States that require or sometimes require evidence of citizenship for initial Medicaid eligibility use types of evidence that are not accepted by CMS or SSA. Further, 13 of the 20 States that report conducting quality control to verify statements of citizenship use types of evidence that are not accepted by CMS or SSA. In its State Medicaid Manual, CMS has two lists of evidence that are slightly different, and neither is comprehensive. To better ensure that States collect evidence that is consistent with CMS standards, CMS should issue a complete list of evidence that States may reference when determining eligibility.

R E C O M M E N D A T I O N S

**CMS should explore allowing State Medicaid staff to use citizenship verifications from other Medicaid-related programs as an additional resource**

When looking at related programs including SSI, Title IV-E, and TANF, we found that these programs are more likely to verify citizenship as a condition of eligibility and, in most cases, use types of evidence that are accepted by CMS or SSA. If CMS determines it appropriate, States that allow applicants to self-declare citizenship could perform checks on the accuracy of these statements using related programs' verification information. This step would not add a burden to applicants and would not require the collection of additional documentation. In Appendix C, we identify which States and programs verify statements of citizenship and use evidence accepted by CMS or SSA.

## AGENCY COMMENTS

CMS concurred with our recommendations. The agency further commented that it has already taken steps to improve safeguards to prevent applicants from providing false statements of citizenship. The full text of CMS's comments is included in Appendix D.

We note several issues with CMS's current efforts. Specifically, CMS explained that, pursuant to Federal regulations, States must verify statements of citizenship for sampled active cases as part of their posteligibility quality control procedures. We reiterate that this regulation applies only to States that operate traditional quality control. States that operate under a pilot or a section 1115 waiver with a quality control component are not required to verify all elements of eligibility, including statements of citizenship as part of their posteligibility case file review.

CMS also commented that States choosing to accept self-declaration of citizenship need to have systems in place for some type of posteligiblity check to ensure that the self-declaration procedure is reliable. CMS stated that it is taking steps to do this by requiring a review of the accuracy of eligibility determinations as part of the Payment Error Rate Measurement (PERM) project. Currently, the Office of Management and Budget is working with CMS to define the scope of the PERM project. As of June, no decision has been made regarding the inclusion of errors related to Medicaid eligibility determinations.

➤ A P P E N D I X ~ A

| Types of Evidence Accepted by CMS or SSA to Document U.S. Citizenship | | |
|---|---|---|
| **Documentation Type** | **CMS** | **SSA** |
| A birth certificate showing birth in the United States | ✓ | ✓ |
| Religious record of birth recorded in the United States or its territories within 3 months of birth, which indicates a U.S. place of birth | ✓ | ✓ |
| United States passport | ✓ | ✓ |
| Form FS-240 (Report of Birth Abroad of a Citizen of the United States) | ✓ | ✓ |
| Form FS-545 (Certification of Birth) | ✓ | ✓ |
| U.S. Citizen I.D. Card Form I-97 (United States Citizen Identification Card) | ✓ | ✓ |
| Form N-550 and N-570 (Certificate of Naturalization) | ✓ | ✓ |
| Forms N-560 and N-561 | ✓ | ✓ |
| Evidence of continuous residence in the United States prior to June 30, 1948 (including school records; marriage license; voter registration card; insurance policy; military service records; Social Security number issued prior to June 30, 1948, etc.) | ✓ | |
| Record receipt of SSI* | ✓ | ✓ |
| Bureau of Vital Statistics, local government, hospital, or clinic records of birth and parentage | ✓ | |
| Court records of parentage, juvenile proceedings, or child support | ✓ | |

Sources: CMS State Medicaid Manual §§ 3212 and 7269 and the SSA Program Operations Manual System: GN 00303.300

A P P E N D I X ~ A

| Documentation Type | CMS | SSA |
|---|:---:|:---:|
| American Indian Card (first issued by INS in 1983) | ✓ | ✓ |
| Form DS-1350 (Certification of Report of Birth) issued by the State Department | | ✓ |
| Northern Mariana Identification (NMI) Card, first issued by INS in 1987, to identify naturalized citizens born in the NMI before November 3, 1986 | ✓ | ✓ |
| Evidence of civil service employment by the U.S. Government before June 1, 1976 | | ✓ |

Sources: CMS State Medicaid Manual §§ 3212 and 7269 and the SSA Program Operations Manual System: GN 00303.300

*Note: In discussions with SSA, we found that verification of receipt of SSI alone does not guarantee that the Medicaid applicant or beneficiary is a U.S. citizen. Medicaid agencies must take the additional step of verifying the Alien/Refugee code in the State Data Exchange report files. Therefore, while CMS does accept this form of documentation, we determined that this might not prove U.S. citizenship.

➤ A P P E N D I X ~ B

| Fiscal Year 2003 MEQC in the 47 States Allowing Self-Declaration of U.S. Citizenship | | |
|---|---|---|
| State | CMS MEQC Categorization | Conducts Some MEQC On Self-Declaration Of U.S. Citizenship |
| Alabama | Traditional | Yes |
| Alaska | Pilot | No |
| Arizona | Waiver | Yes |
| Arkansas | Waiver | Yes |
| California | Pilot | Yes |
| Colorado | Pilot | No |
| Connecticut | Traditional | Yes |
| Delaware | Pilot | No |
| District of Columbia | Pilot | No |
| Florida | Traditional | Yes |
| Georgia | Traditional | No |
| Hawaii | Waiver | Yes |
| Idaho | Pilot | No |
| Illinois | Pilot | Yes |
| Indiana | Pilot | Yes |
| Iowa | Pilot | No |
| Kansas | Pilot | No |
| Kentucky | Pilot | No |
| Louisiana | Pilot | No |
| Maine | Traditional | No |
| Maryland | Waiver | Yes |
| Massachusetts | Waiver | No |
| Michigan | Traditional | Yes |
| Minnesota | Waiver | No |
| Mississippi | Traditional | Yes |
| Missouri | Waiver | No |
| Nebraska | Pilot | No |

A P P E N D I X ~ B

| State | CMS MEQC Categorization | Conducts Some MEQC On Self-Declaration Of U.S. Citizenship |
|---|---|---|
| Nevada | Pilot | No |
| New Jersey | Pilot | No |
| New Mexico | Pilot | No |
| North Carolina | Pilot | No |
| North Dakota | Traditional | Yes |
| Ohio | Pilot | No |
| Oklahoma | Traditional | No |
| Oregon | Waiver | No |
| Pennsylvania | Pilot | Yes |
| Rhode Island | Traditional | Yes |
| South Carolina | Pilot | Yes |
| South Dakota | Pilot | No |
| Tennessee | Pilot* | Yes |
| Utah | Pilot | Yes |
| Vermont | Traditional | Yes |
| Virginia | Pilot | No |
| Washington | Pilot | No |
| West Virginia | Pilot | No |
| Wisconsin | Pilot | Yes |
| Wyoming | Pilot | No |
| Total Traditional | 11 | - |
| Total Pilot | 28 | - |
| Total Waiver | 8 | - |
| Total Yes | - | 20 |
| Total No | - | 27 |

Source: OIG analysis of State MEQC practices, 2004

*In fiscal year 2003, Tennessee operated under both an MEQC pilot and an 1115 waiver. We considered Tennessee a program because it conducted MEQC activities under its pilot, which included the entire Medicaid population.

   A P P E N D I X  ~  C

| State | Medicaid | TANF | TANF Uses Evidence Accepted by CMS or SSA | Foster Care | Foster Care Uses Evidence Accepted by CMS or SSA |
|-------|----------|------|-------------------------------------------|-------------|---------------------------------------------------|
| **Related Programs Policies on Self-Declaration and Their Use of Documentation Accepted by CMS or SSA:  A Guide for Medicaid Eligibility Staff** |
| AL | ▲ | Δ | Yes | ● | No |
| AK | Δ | Δ | Yes | ● | Yes |
| AZ | ▲ | Δ | No | ● | Yes |
| AR | ▲ | ▲ | NA | ● | Yes |
| CA | Δ | ● | Yes | ● | Yes |
| CO | ▲ | ▲ | NA | ● | Yes |
| CT | ▲ | Δ | No | Δ | No |
| DE | ▲ | ● | No | ● | Yes |
| DC | ▲ | ▲ | NA | ● | Yes |
| FL | Δ | ▲ | NA | ● | No |
| GA | ▲ | ▲ | NA | ● | No |
| HI | ▲ | ● | Yes | ● | No |
| ID | ▲ | ▲ | NA | ● | No |
| IL | ▲ | Δ | Yes | ● | Yes |
| IN | Δ | ● | Yes | ● | Yes |
| IA | ▲ | Δ | Yes | ● | Yes |
| KS | ▲ | ▲ | NA | ● | Yes |
| KY | ▲ | ▲ | NA | ● | No |
| LA | ▲ | ▲ | NA | Δ | Yes |
| ME | ▲ | ▲ | NA | ● | Yes |
| MD | ▲ | Δ | Yes | ● | Yes |
| MA | ▲ | Δ | No | ▲ | NA |
| MI | ▲ | Δ | Yes | ● | Yes |
| MN | ▲ | ▲ | NA | ▲ | NA |
| MS | Δ | ▲ | NA | ● | Yes |
| MO | ▲ | Δ | Yes | Δ | Yes |
| MT | ● | ● | Yes | ● | Yes |
| NE | ▲ | ▲ | NA | ● | No |

A P P E N D I X   C

| State | Medicaid | TANF | TANF Uses Evidence Accepted by CMS or SSA | Foster Care | Foster Care Uses Evidence Accepted by CMS or SSA |
|-------|----------|------|------|------|------|
| NV | ▲ | ● | Yes | ● | Yes |
| NH | ● | ● | No | ● | Yes |
| NJ | Δ | ● | No | Δ | Yes |
| NM | ▲ | ▲ | NA | Δ | No |
| NY | ● | ● | Yes | ● | Yes |
| NC | ▲ | ▲ | NA | ● | No |
| ND | ▲ | ● | Yes | Δ | No |
| OH | ▲ | ● | Yes | ● | Yes |
| Ok | ▲ | ▲ | NA | ● | Yes |
| OR | ▲ | ▲ | NA | ● | Yes |
| PA | ▲ | Δ | No | ● | Yes |
| RI | Δ | ● | Yes | ● | Yes |
| SC | ▲ | ▲ | NA | ● | Yes |
| SD | ▲ | ▲ | NA | ● | Yes |
| TN | ▲ | ▲ | NA | ● | Yes |
| TX | ● | ● | Yes | Δ | No |
| UT | ▲ | ▲ | NA | ● | No |
| VT | ▲ | Δ | Yes | ● | Yes |
| VA | ▲ | ▲ | NA | ● | Yes |
| WA | ▲ | ▲ | NA | ● | Yes |
| WV | ▲ | ▲ | NA | ● | Yes |
| WI | ▲ | ● | Yes | ● | Yes |
| WY | ▲ | ● | Yes | ● | No |
| Total ▲ | 40 | 24 | - | 2 | - |
| Total Δ | 7 | 12 | - | 7 | - |
| Total ● | 4 | 15 | - | 42 | - |
| Total Yes | - | - | 20 | - | 35 |
| Total No | - | - | 7 | - | 14 |
| Total NA | - | - | 24 | - | 2 |

Source: OIG analysis of related program policies on self-declaration of U.S. citizenship, 2004

\* Because SSA always verifies the citizenship status of applicants for a Social Security number or for SSI, a State-by-State description of this policy does not appear in this table.
▲ Denotes a State that reports permitting self-declaration of U.S. citizenship or reports not requiring evidence of citizenship to qualify for federally funded benefits.
Δ Denotes a State that reports sometimes permitting self-declaration of U.S. citizenship.
● Denotes a State that reports never permitting self-declaration or requiring evidence of U.S. citizenship to qualify for this federally funded benefit.

► A P P E N D I X  ~  D



DEPARTMENT OF HEALTH & HUMAN SERVICES

Centers for Medicare & Medicaid Services

RECEIVED

2005 APR 12  PM 3: 50

OFFICE OF INSPECTOR
GENERAL

*Administrator*
Washington, DC  20201

DATE:     APR ~ 8 2005

TO:       Daniel R. Levinson
          Acting Inspector General
          Office of Inspector General

FROM:     Mark B. McClellan, M.D., Ph.D.
          Administrator
          Centers for Medicare & Medicaid Services

SUBJECT:  Office of Inspector General (OIG) Draft Report:  "Self-Declaration of U.S.
          Citizenship for Medicaid" (OEI-02-03-00190)

Thank you for the opportunity to review and comment on the above OIG draft report.
OIG reviewed the extent to which states allow self-declaration of U.S. citizenship for
Medicaid and related programs and identified potential vulnerabilities associated with
quality control activities and evidence used to verify citizenship.

States must provide Medicaid to all United States citizens who otherwise meet the
eligibility criteria of the state's Medicaid program.  Aliens' eligibility for full Medicaid
coverage is limited to certain "qualified aliens."  Per section 1137(d) of the Social
Security Act, states must require, as a condition of eligibility, a declaration in writing,
signed under penalty of perjury, that an applicant is a citizen or national of the United
States.  Pursuant to that statutory provision, the Centers for Medicare & Medicaid
Services (CMS) permits states to accept applicants' self-declaration of citizenship, but
also to require further verification, if necessary.  This flexible policy allows states to
enroll eligible individuals while preserving program integrity.  It is in line with a larger
effort promoted by CMS to help states simplify the Medicaid application process.

As there are inherent challenges in trying to provide Medicaid benefits expeditiously,
while still ensuring the accuracy of eligibility determinations, OIG conducted this review.
We appreciate OIG's efforts.  OIG's findings reinforced our policy approach.  The
review found that, while there are vulnerabilities in states' accepting self-declaration of
citizenship, states have little evidence that many non-eligible, non-citizens are receiving
Medicaid as a result.  The review also recommended steps for improving safeguards that
CMS and states have already undertaken.

The OIG's draft report provided three specific recommendations for improving
safeguards.  Those recommendations and our responses are as follows.

A P P E N D I X ~ D

Page 2 – Daniel R. Levinson

OIG Recommendation

The CMS should strengthen post-eligibility quality controls in states that allow self-declaration.

CMS Response

We concur. We agree that states should have strong post-eligibility quality control activities in place in order to reduce losses from all eligibility errors, including self-declaration of citizenship. In fact, CMS' Medicaid Eligibility Quality Control regulations require states to verify that the state properly determined the citizenship status of sampled active cases. Pursuant to Federal regulations at 42 CFR 431.812(e), states "must collect and verify all information necessary to determine the eligibility status of each individual included in an active case selected in the sample as of the review month and whether Medicaid payments were for services which the individual was eligible to receive."

The report does not find particular problems regarding false allegations of citizenship, nor are we aware of any. However, we believe that, as with self-declarations of income, states that accept self-declaration of citizenship need to have systems in place for some type of post-eligibility check to ensure that the self-declaration procedure is reliable. CMS is taking steps to have states strengthen post-eligibility controls by requiring a review of the correctness of eligibility determination under the proposed Payment Error Rate Measurement regulation, published on August 27, 2004. In the absence of any indication that there are improper self-declarations, we do not think we need to do more at this time. The CMS also will reiterate its policy at the 2005 fall meeting of the National Association of State Medicaid Directors.

OIG Recommendation

The CMS should issue a complete list of evidence that states may reference when determining eligibility.

CMS Response

We concur. For states that choose to require documentation of applicants' citizenship, CMS has provided a list of acceptable documentation in its State Medicaid Manual, which is posted on its Web site. The U.S. Citizenship and Immigration Services (formerly the Immigration and Naturalization Service) recently published a regulation containing a longer list of documentation that states may use. The CMS currently references that regulation on its Web site, but will adopt the OIG's recommendation and post the new list per se. In addition, at the time we publish our next State Medicaid Manual update, we will include the new list.

A P P E N D I X ~ D

Page 3 -- Daniel R. Levinson

OIG Recommendation

The CMS should explore allowing state Medicaid staff to use citizenship verifications from other Medicaid-related programs as an additional resource.

CMS Response

We concur. This recommendation reinforces our current approach, which permits states to accept citizenship verification from other programs. We articulated the principle of permitting states to accept other programs' determinations with respect to particular eligibility requirements in our Guide to Medicaid eligibility, "Continuing the Progress: Enrolling and Retaining Low-Income Families and Children in Health Care Coverage." We will provide technical assistance to states that request it.

While OIG's report reinforces our current policy approach to provide states with the flexibility to enroll eligible individuals while preserving program integrity, we will follow up on OIG's recommendations as stated above.

► A C K N O W L E D G M E N T S

This report was prepared under the direction of Jodi Nudelman, Acting Regional Inspector General for Evaluation and Inspections in the New York Regional Office. Other principal Office of Evaluation and Inspections staff who contributed include:

Ellen Vinkey, *Team Leader*

Christi Macrina, *Project Leader*

David Rudich, *Program Analyst*

Linda Ragone, *Deputy Regional Inspector General, Region III*

Tricia Davis, *Director, Medicare and Medicaid Branch*

Elise Stein, *Director, Public Health and Human Services*

Linda Hall, *Program Specialist*

Barbara Tedesco, *Mathematical Statistician*