TAB I



820 First Street NE, Suite 510
Washington, DC 20002

Tel: 202-408-1080
Fax: 202-408-1056

center@cbpp.org
www.cbpp.org

June 16, 2006

# HHS GUIDANCE WILL EXACERBATE PROBLEMS CAUSED BY NEW MEDICAID DOCUMENTATION REQUIREMENT

Judith Solomon and Andy Schneider

The Deficit Reduction Act (DRA) of 2005 imposes a new documentation requirement on the more than 50 million U.S. citizens now covered by Medicaid, as well as on citizens who will need the program's health and long-term care services in the future. Starting July 1, all U.S. citizens applying for Medicaid or renewing their Medicaid eligibility will have to prove their citizenship by presenting a U.S. passport or the combination of a U.S. birth certificate and an identification document. Individuals who cannot do so will be denied health services financed with federal Medicaid funds.[1] (The requirement does not apply to legal immigrants, who for many years have been required to demonstrate satisfactory immigration status and financial need in order to qualify for Medicaid.)

On June 9 — just three weeks before this new requirement will take effect — the Centers for Medicare & Medicaid Services (CMS) at the U.S. Department of Health and Human Services issued guidance to state Medicaid agencies explaining the requirement and what individuals and states must do to comply with it.[2] *The guidance makes the documentation requirements far more burdensome on U.S. citizens and state Medicaid agencies than is required by the DRA or needed to ensure that U.S. citizens are in fact U.S. citizens.* Under the terms of the guidance:

- U.S. citizens applying for or renewing their Medicaid coverage must produce passports or birth certificates to prove their citizenship unless they can show these documents do not exist or cannot be obtained within a reasonable period of time.

- All documents provided to meet the requirement must either be originals or copies certified by the issuing agency.

- U.S. citizens who apply for Medicaid and meet all eligibility criteria cannot receive coverage for needed health or long-term care services until they have produced the required documents proving that they are citizens. The guidance prohibits states from making coverage available

---

[1] The new requirement is at section 6036 of the Deficit Reduction Act. For more information about the provision, see "The New Medicaid Citizenship Documentation Requirement: A Brief Overview," Center on Budget and Policy Priorities, April 20, 2006.

[2] The guidance was issued as a State Medicaid Director Letter, SMDL# 06-012. CMS plans to issue "interim final" regulations prior to July 1. Public comments will be accepted on these regulations, but the regulations will be effective while comments are being received and considered.

> **Survey Finds Documentation Requirement Could Jeopardize
> Medicaid Coverage for 3 to 5 Million U.S. Citizens**
>
> - A nationally representative survey of 2,026 adults, commissioned by the Center on Budget and Policy Priorities and conducted by the Opinion Research Corporation in January 2006, found that roughly 3.2 to 4.6 million U.S.-born citizens now on Medicaid are at risk of losing coverage under the new requirement because they do not have a U.S. passport or birth certificate readily available. This group consists of:
>
> - *About 1.7 million U.S.-born adults on Medicaid.* About one in every twelve (8 percent) U.S.-born adults age 18 or older who have incomes below $25,000 report they do not have a U.S. passport or U.S. birth certificate in their possession. This indicates that about 1.7 million U.S.-born adults covered by Medicaid could either lose their health insurance because of the new requirement or experience delays in obtaining coverage as they attempt to secure these documents.
>
> - *Between 1.4 and 2.9 million U.S.-born children on Medicaid.* More than one-tenth of U.S.-born adults with children who have incomes below $25,000 reported they did not have a birth certificate or passport for at least one of their children. This indicates that between 1.4 and 2.9 million children enrolled in Medicaid apparently do not have the paperwork required.
>
> Groups that the survey found to be at higher risk of lacking the required documents included African Americans, senior citizens, and residents of rural areas.
>
> Source: Leighton Ku, Donna Cohen Ross and Matt Broaddus, "Survey Indicates the Deficit Reduction Act Jeopardizes Medicaid Coverage for 3 to 5 Million U.S. Citizens, Center on Budget and Policy Priorities, revised February 17, 2006.

while the applicant attempts to obtain a passport or birth certificate. Delaying coverage for applicants in this way is a significant departure from the draft guidance that HHS circulated in May. The draft guidance would have allowed U.S. citizens who meet all other eligibility requirements to receive Medicaid coverage while they obtain the documents that prove their citizenship. By contrast, under the final guidance, low-income children, parents, seniors and people with disabilities who have applied for passports, copies of their birth certificates, or other documents will be denied coverage for health care services while they wait for government agencies to provide these documents.

- The documentation requirement will even apply to seniors and people with physical or mental disabilities who are Medicare beneficiaries, as well as to seniors and people with disabilities who receive SSI benefits, all of whom have already had their citizenship verified by the Social Security Administration. Many of these people may now be in a physical or mental state that makes it difficult, if not impossible, for them to produce these documents (and in some cases, even to comprehend what they are being asked to do).

- State Medicaid agencies will have to obtain documents showing that U.S. citizen children in foster care are citizens, even though state child welfare agencies have already verified that fact in determining these children's eligibility for federal foster care payments.

2

These provisions are likely to result in delays and outright denials of coverage for many U.S. citizens applying for Medicaid, as well as the loss of coverage for many U.S. citizens now enrolled in Medicaid. As a result, the number of uninsured American citizens is likely to rise significantly, and the amount of uncompensated provided by hospitals and other health care providers is likely to increase markedly as well.

Adding to this problem, although the DRA requires HHS to undertake an outreach program to educate beneficiaries about the new citizenship documentation requirement and what they need to do to comply, CMS has yet even to start this outreach program. HHS has not launched this effort even though the law clearly states that the outreach program shall commence "as soon as practicable after enactment." The DRA was enacted on February 8.[3]

## Passport or Birth Certificate Will Be Required in Most Cases

Under the DRA, U.S. citizens who produce a passport have satisfied the requirement to document their citizenship. Recognizing that many low-income Medicaid beneficiaries do not have passports (which are costly to obtain), the DRA also allows U.S. citizens to document their citizenship through a U.S. birth certificate (or other proof that they were born in the United States) plus a driver's license or other document proving their personal identity.[4]

In addition, the DRA gives the Secretary of HHS discretion to specify additional documents that provide proof of U.S. citizenship or a reliable means of documenting personal identity. Instead of using this discretion to make the documentation requirement less burdensome for U.S. citizens and state Medicaid agencies, however, CMS has made the requirement far more burdensome than necessary. The June 9 guidance establishes a hierarchy of acceptable documents and directs states to ask for documents at the highest level of reliability before accepting a document of lesser reliability. Only if a document does not exist or cannot be obtained within a reasonable period may a state accept a document of lesser reliability.[5] There is no reference to such a hierarchy process in the DRA.

"Primary" documents, considered by the June 9 guidance to be the most reliable, are passports and certificates of naturalization. If these documents are not available, the state can accept "secondary" documents. This suggests that states will have to require individuals to produce passports whenever possible.

U.S. citizens who cannot provide "primary" documents to meet the documentation requirement must provide proof both of citizenship and of their personal identity. The guidance considers birth

---

[3] Section 6036(c) of the Deficit Reduction Act, P.L:. 109-171. The June 9 guidance states that CMS "will implement an outreach plan" to explain the new documentation requirement but does not specify when or how.

[4] Passports cost $97 for individuals over age 16 and $82 for those under 16. Getting passports on an expedited basis costs an additional $60.

[5] The guidance measures a "reasonable opportunity" period to obtain documents by the time limits to determine eligibility for benefits. That time period is 45 days for everyone except people with disabilities, who have 90 days to establish that they meet Medicaid eligibility requirements. 42 CFR §435.911.

3

certificates, along with several other documents such as final adoption decrees and official records of military service, to be "secondary evidence" of citizenship.

Most of the documents that the guidance lists as acceptable proof of identity, such as a driver's license or a school identification card, include a picture of the individual. Many people with disabilities do not have such documents. Yet the guidance makes no provision to help people with disabilities prove their identity. The guidance fails to include a provision specifically referenced in the DRA that would allow people with disabilities to use affidavits from nonprofit organizations to prove their identity.[6]

If the state determines that "secondary" evidence does not exist or cannot be obtained in a reasonable period, the guidance includes third and fourth levels of reliable evidence. One example of a "third level" document is a hospital record, created at least five years before the individual applied for Medicaid, that indicates a U.S. place of birth.

The guidance states that "fourth level" evidence of citizenship may "ONLY be used in the rarest of circumstances," when all other levels of evidence do not exist or cannot be obtained within a reasonable period. One example of a "fourth level" document is a written affidavit. Two affidavits must be submitted, one of which must be from a person not related to the applicant or beneficiary. Persons making the affidavits must themselves be able to prove their citizenship and identity and must have personal knowledge of the "event(s)" establishing the applicant or beneficiary's citizenship, presumably his or her birth. Such affidavits are not likely to be helpful for most applicants and beneficiaries who have been unable to provide other proof, because these individuals will probably not have ready access to two people who have personal knowledge of their birth.

The hierarchy specified by the June 9 guidance is likely to put many vulnerable U.S. citizens at risk of having their Medicaid coverage terminated, denied, or delayed. For example:

- An elderly U.S. citizen who has Alzheimer's and resides in a nursing home might lose Medicaid coverage that pays for her care because her birth certificate cannot be located or she lacks a driver's license. Given her mental state, she likely would not be able to tell the nursing home staff where to apply to get her birth certificate and certainly would not be able to pass a driving test.

- A child who is a U.S. citizen and is placed in foster care because her mother is incarcerated or has disappeared or died may not receive Medicaid coverage for the health services she needs because a certified birth certificate cannot be located in her records.

- A low-income U.S. citizen who is diagnosed with breast cancer and otherwise qualifies for Medicaid may be delayed in receiving treatment for a number of weeks while she waits for a certified copy of her birth certificate.

- An elderly African American woman who was never issued a birth certificate (many elderly African Americans were born at home and never received a birth certificate because their parents did not have access to a hospital due to racial discrimination, especially if they were

---

[6] 8 CFR 274a.2(b)(1)(v)(B)(4).

4

born in the South in the early decades of the last century) and who has no living family members who could attest to her birth in the United States may lose Medicaid coverage.

## All Documents Must Be Originals or Certified Copies

The June 9 guidance stipulates that all citizenship and identity documents presented by U.S. citizens seeking to secure or retain Medicaid coverage must be either originals or copies "certified by the issuing agency." The DRA has no such stipulation.

A certified copy of a birth certificate costs from $5 to $30, depending on the state. Normal processing times can range from several days to eight weeks, and expedited delivery can cost up to $60. These costs can be burdensome for Medicaid applicants and beneficiaries: most Medicaid beneficiaries have income below the poverty line.

Requiring certified copies also undermines efforts to make it easier for working families to apply and retain Medicaid coverage. As of July 2005, 45 states (including the District of Columbia) did not require a face-to-face interview when applying for Medicaid for a child, and 48 states (including DC) did not require a face-to-face interview when renewing coverage for a child. But after spending time and money to obtain a certified document to prove their citizenship, low-income individuals may be reluctant to take the chance of losing the document in the mail. Many likely will opt to visit the Medicaid eligibility office to apply for or renew their coverage, which may require them to take time off from work and lose some pay and may, in some cases, antagonize their employers.

## Applicants' Coverage Will Be Delayed Until Required Documents Are Provided

The June 9 guidance prohibits states from providing Medicaid coverage to U.S. citizens who apply for Medicaid until they satisfactorily document their citizenship. This constitutes a step backward from a previous draft of the guidance, which would have allowed applicants to receive Medicaid while they obtained the needed documents.

Under the previous draft, which was circulated in May, U.S. citizens who signed a Medicaid application that included a declaration of citizenship and who met all other eligibility conditions could receive benefits while they obtained the documents needed to prove citizenship. (They would subsequently lose their eligibility if they failed to provide the documents.) States would receive federal matching funds for the costs of Medicaid services during this period of time. This approach parallels the treatment of legal immigrants under current law, who may receive Medicaid benefits during the time it takes them to obtain the documents they need to prove that they are in a legal immigration status.[7]

Under the June 9 guidance, in contrast, U.S. citizens applying for benefits will have to wait to obtain documents such as a passport or birth certificate before they can receive Medicaid coverage — even when they have made a sworn declaration that they are citizens, have met all eligibility requirements to receive Medicaid, and have applied for a passport or birth certificate and are waiting

---

[7] Section 1137(d)(4) of the Social Security Act.

5

to receive it. During this period, they may go without coverage for prescription drugs, doctor's visits, mental health treatment, and all other health care services unless their health care providers are willing to furnish such services free of charge.

**Guidance Imposes Unnecessary Burdens on Medicare and SSI Recipients and Children in Foster Care**

The millions of U.S. citizens affected by the DRA documentation requirement include more than six million seniors and people with disabilities now receiving both Medicaid and Medicare (more than one million of whom reside in nursing facilities), as well as seniors and people with disabilities who are receiving SSI benefits. Both of these groups already have had their citizenship verified by the Social Security Administration.[8] Yet the June 9 guidance does nothing to reduce the documentation burden on these U.S. citizens. It requires original documents or certified copies to be produced, and only allows the use of the information already in Social Security Administration databases after it has been determined that documents proving an individual's citizenship are not available.

In addition, Medicare or SSI recipients who are not currently receiving Medicaid but apply for Medicaid in the future could face substantial delays in receiving Medicaid coverage for nursing home care, home- and community-based services, or (in the case of SSI recipients) prescription drugs until they satisfactorily document their citizenship, as noted above.

The guidance also imposes an unnecessary documentation burden on U.S. citizen children who are in foster care. This is particularly unfortunate, because research has documented that children in foster care are much more likely to have chronic medical conditions and emotional problems than other children.[9] Currently, when a state child welfare agency determines that a child is eligible for federal foster care payments — a process that includes verifying that the child is a citizen or a legal non-citizen[10] — the state signs the child up for Medicaid benefits as well.[11] The new guidance ignores this longstanding linkage between Medicaid and foster care and forces state Medicaid agencies to duplicate the work of state child welfare agencies by documenting the citizenship of children whose citizenship (or legal status) has already been verified.

---

[8] The language of the DRA suggests that Congress apparently intended to exempt most SSI recipients and dually eligible Medicare and Medicaid beneficiaries from the new documentation requirement. The law includes a provision that exempts "aliens" enrolled in these programs. This appears to be a drafting error in the legislation. As written, this provision has no meaning because it exempts aliens from a requirement that does not apply to them, and is applicable only to individuals who apply as citizens. This provision of the law makes sense only if the work "aliens" was meant to be "individuals," in which case most SSI recipients and dually eligible Medicare/Medicaid beneficiaries would be exempt. Reports have circulated for several months that at some point, a "technical corrections" bill may move in Congress to correct inadvertent drafting errors in the DRA, but no such legislation has yet emerged.

[9] U.S. General Accountability Office, "Foster Care: Health Needs of Many Young Children are Unknown and Unmet," GAO/HEHS-95-114 (1995).

[10] Administration for Children and Families, Child Welfare Policy Manual, Section 8.4B.

[11] Sections 402(a)(3) and 1902(a)(10)(A) of the Social Security Act.

6

This will not only create additional administrative costs and burdens for states, but also impose new paperwork requirements on foster families. It also could cause delays in Medicaid coverage for foster children if the documents needed to prove their citizenship are not immediately available.

Moreover, the guidance does not explain how documentation or declarations of citizenship can be obtained for children in foster care who are separated from their families. It also fails to explain whether state child welfare agencies are expected to share information with state Medicaid agencies despite confidentiality rules that protect state child welfare records. Making states obtain declarations and documentation of citizenship for these vulnerable children, while potentially jeopardizing these children's ability to receive necessary health care, makes little sense.

**Conclusion**

The documentation requirement imposed by the DRA is itself unnecessary. A comprehensive study conducted by HHS's Inspector General in 2005 found no substantial evidence that illegal immigrants are obtaining Medicaid by falsely claiming to be citizens. The requirement's main effect will be to make Medicaid less accessible to low-income U.S. citizens who qualify for the program.

HHS's June 9 guidance makes this bad situation worse by unnecessarily restricting the ways in which citizens can prove their citizenship, denying them needed health coverage while they obtain the required documents, and forcing state Medicaid agencies to document the citizenship of people who have already documented their citizenship through other programs. None of these harmful and wasteful provisions are mandated by the Deficit Reduction Act.