## DECLARATION OF ANDREA J. SLOAN, R.N., ESQ.

The undersigned, Andrea J. Sloan, R.N., Esq., having been duly sworn, certifies under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.  My name is Andrea J. Sloan. I am over eighteen years of age and competent to testify. I have personal knowledge of the matters and facts set forth in this Declaration. I have relied upon information contained in the medical records of the individuals listed as Wards herein.

2.  I am a registered nurse and an attorney admitted to practice in the District of Columbia. I am the court-appointed legal guardian of approximately forty (40) individuals, many of whom are nursing home residents who reside in the District of Columbia.

3.  For purposes of this declaration, the information provided herein is "to the best of my knowledge," which includes statements made by the nursing home resident at issue and for whom I am a legal guardian, and/or that resident's family members, friends or caregivers over the course of time.

4.  I have been appointed as the legal guardian of Frederick Reeves, Jessie Robertson, Darryl Lambert, Garland Little, Mildred Clayborne, Aaron Ashley, Olivie Johnson and Wilbert Malloy (each a "Ward" and, collectively, the "Wards") by the District of Columbia Superior Court, pursuant to District of Columbia Code Ann. §21-2001 et seq.

5. Frederick Reeves, reportedly born in 1936 in Danville, Virginia, is a United States Citizen.

6. Jessie Robertson, reportedly born in 1928, birthplace unknown, is a United States Citizen.

7. Darryl Lambert, reportedly born in 1937 in Washington, D.C., is a United States Citizen.

8. Garland Little, reportedly born in 1936 in rural North Carolina, is a United States Citizen.

9. Mildred Clayborne, reportedly born in 1931 in southern Virginia, is a United States Citizen.

10. Aaron Ashley, reportedly born in 1931 in Maryland, is a United States Citizen.

11. Olivie Johnson, reportedly born in 1936, possibly in Louisiana, is a United States Citizen.

12. Wilbert Malloy, reportedly born in 1927, birthplace unknown, is a United States Citizen.

13. All of the Wards currently reside in a nursing home in Washington, D. C.; their placement is permanent.

14. None of the Wards has a home or family for placement if he or she were discharged from the nursing home.

15. Frederick Reeves was admitted to the Washington Nursing Facility, 2425 25th Street, SE, Washington, DC 20020, on June 13, 2001 and has resided there

continuously since that date. Before that time, Mr. Reeves is believed to have lived in Washington, D.C.. where he was homeless. Mr. Reeves was institutionalized at St. Elizabeth's Hospital in Washington, D.C. for some period of his adult life. To the best of my knowledge, Frederick Reeves currently suffers from the following health conditions: dementia, hypertension, history of cerebral vascular accident (stroke), diabetes, a history of head trauma, impaired vision, impaired verbal communication, and impaired cognition. He requires at least four medications on a daily basis. He requires assistance with activities of daily living and requires constant supervision. Frederick Reeves is unable to provide me with information regarding his medical and social history.

16. Jessie Robertson was admitted to the Washington Nursing Facility on April 15, 1996 and has resided there continuously since that date. To the best of my knowledge, Jessie Robertson currently suffers from the following health conditions: insulin dependent diabetes mellitus, multi-infarct dementia, history of cerebral vascular accident (stroke) with left hemiparesis (left-sided weakness / paralysis), hypertension, bronchospasm, cataracts, and contractures of her limbs. She has a PEG (gastrostomy, feeding tube) and is wholly dependent on nursing staff for all feeding and other activities of daily living. She is not responsive to verbal or other commands. Her family is not available and involved with her care.

17. Darryl Lambert was admitted to the Washington Nursing Facility, 2425 25th Street, SE, Washington, D.C. 20020, on September 25, 1996 and has resided there continuously since that date. To the best of my knowledge, Darryl Lambert currently

suffers from the following health conditions: global aphasia, seizure disorder, dementia, history of cerebral vascular accident (stroke), cataracts, peripheral vascular disease, impaired verbal communication, and impaired cognition. He requires at least four medications on a daily basis. He requires assistance with activities of daily living and requires constant supervision. Darryl Lambert is unable to provide me with information regarding his medical and social history. His family does not visit and is not involved with his care.

18.   Garland Little was admitted to the Washington Nursing Facility, 2425 25th Street, SE, Washington, D.C. 20020, on November 12, 2004 and has resided there continuously since that date. To the best of my knowledge, Garland Little currently suffers from the following health conditions: history of cerebral vascular accident (stroke), global and segmental hypokinesis, right-sided weakness, aphasia, cataracts, impaired verbal communication, and impaired cognition. He requires at least six medications on a daily basis. He requires assistance with activities of daily living and requires constant supervision. Garland Little is unable to provide me with information regarding his medical and social history. He has no known family or friends in the area and has previously lived in a homeless shelter.

19.   Mildred Clayborne was admitted to the Washington Nursing Facility, 2425 25th Street, SE, Washington, D.C. 20020, on September 1, 1999 and has resided there continuously since that date. To the best of my knowledge, Mildred Clayborne currently suffers from the following health conditions: history of cerebral vascular accident (stroke), hypertension, encephalopathy, diabetes, schizophrenia, impaired

verbal communication, and impaired cognition. She requires at least six medications on a daily basis. She requires assistance with activities of daily living and requires constant supervision. Mildred Clayborne is unable to provide me with information regarding her medical and social history. She has no known family in the area.

20.     Aaron Ashley was admitted to the Washington Nursing Facility, 2425 25th Street, SE, Washington, D.C. 20020, on July 31, 2001 and has resided there continuously since that date. To the best of my knowledge, Aaron Ashley currently suffers from the following health conditions: history of alcohol abuse, positive PPD, peripheral vascular disease, paranoid schizophrenia, history of pulmonary embolism, history of cardiac arrest, senile dementia, cataracts, impaired verbal communication, and impaired cognition. He requires at least four medications on a daily basis. He requires assistance with activities of daily living and requires constant supervision. Aaron Ashley is unable to provide me with information regarding his medical and social history. He has no known family or friends in the area.

21.     Olivie Johnson was admitted to the Rock Creek Manor Nursing home at 2131 O Street, NW, Washington, D.C. 20037, on May 24, 2005 and has resided there continuously since that date. Prior to that date, she was homeless for many years in the District of Columbia. To the best of my knowledge, Olivie Johnson currently suffers from the following health conditions: paranoid schizophrenia and legal blindness. It is medically necessary for her to take medications on a daily basis, although she refuses to do so. She requires some assistance with activities of daily living and requires constant supervision. Olivie Johnson is unable or unwilling to

provide me with information regarding her medical and social history. She has no known family or friends in the area.

22. Wilbert Malloy was admitted to the Grant Park Nursing Home, 5000 Nannie Helen Burroughs Avenue, NE, Washington, D.C. 20019, on May 8, 2001 and has resided there continuously since that date. Prior to that date he reportedly lived in a rooming house in the District of Columbia for at least 20 years. To the best of my knowledge, Wilbert Malloy currently suffers from the following health conditions: diabetes, dementia, history of alcohol abuse, impaired verbal communication, and impaired cognition. He requires at least four medications on a daily basis. He requires assistance with activities of daily living and requires constant supervision. Wilbert Malloy is unable to provide me with information regarding his medical and social history. He has no known family or friends in the area.

23. To the best of my knowledge and to treat the aforementioned health conditions, it is medically necessary for each Ward to not only receive skilled nursing services in a residential, skilled nursing facility, but also to receive medical supervision, psychiatric, podiatric, ophthalmologic, social, recreational and/or other services.

24. To the best of my knowledge, each Ward currently meets each of the eligibility requirements necessary to remain enrolled in Washington, D.C.'s Medicaid program (the "Program"). Specifically:

    a. Each Ward is a United States citizen.

    b. Each Ward's income level is at or below the level of the Program's

   eligibility requirements.

  c. Each Ward's resource levels are at or below the Program's eligibility requirements.

25. To the best of my knowledge, the date of each Ward's initial application to enroll in the Program was at or about the date of admission to the respective nursing facility, with a retroactive effective date of the date of admission.

26. To the best of my knowledge, each Ward has been enrolled in the Program since the retroactive effective date of his or her initial application to enroll in the Program and, as of the date signed below, continues to be so enrolled.

27. To the best of my knowledge, the health care providers that provide the skilled nursing and other services necessary to treat the Wards' aforementioned health conditions, including, but not limited to, Washington Nursing Facility, Grant Park Nursing Home and Rock Creek Manor Nursing Home, are reimbursed by the Program.

28. To the best of my knowledge and because of his or her income and resource levels, each Ward is unable to personally reimburse their respective nursing home of residence, as well as the other healthcare providers that provide skilled nursing services and other healthcare services to the Ward.

29. Each Ward will lose access to skilled nursing services and treatment for personal care needs, medical care needs and skilled nursing needs for the health conditions listed above if the providers of those services are not reimbursed. In addition, each Ward would be homeless and would lose the social contacts established during their residency at the respective nursing home.

30. If each Ward does not receive skilled nursing services and/or treatment for the health conditions listed above, his or her health status would quickly, irreparably and irreversibly decline.

31. With respect to each of the following documents and to the best of my knowledge, the Wards possess neither an original of such a document nor a copy of such a document certified by the original issuing agency, whether valid or expired, if applicable. Furthermore and to the best of my knowledge, each Ward lacks the capacity and cannot obtain either an original document nor a copy of such a document certified by the original issuing agency within forty-five (45) days from the date of request, or within any reasonable period of time:

   a. Unites States Passport.

   b. Form N-550 or N-570 (Certificate of Naturalization).

   c. Form N-560 or N-561 (Certificate of United States Citizenship).

   d. State-issued driver's license.

   e. State-issued identification document other than a State-issued driver's license.

   f. Certificate of birth in any one of the fifty (50) States, the District of Columbia, American Samoa, Swain's Island, Puerto Rico, the U.S. Virgin Islands, the Northern Mariana Islands, or Guam.

   g. Form FS-545 (Certification of Birth Abroad).

   h. Form DS-1350 (Certification of Report of Birth).

   i. Form I-197 (United States Citizen Identification Card).

j. Form FS-240 (Consular Report of Birth Abroad of a Citizen of the United States).

k. American Indian Card (I-872).

l. Northern Mariana Card (I-873).

m. A final adoption decree.

n. Evidence of civil service employment by the U.S. government before June 1, 1976.

o. Official Military record of service.

p. Extract of a hospital record, on hospital letterhead, established at the time of his or her birth, that indicates the place of his or her birth.

q. Life or health or other insurance record showing the place of his birth and that was created on or before 5 years before initial application date for Medicaid.

r. Federal or State census record showing either his U.S. citizenship or his or her place of birth.

s. Seneca Indian tribal census record showing his or her place of birth and that was created on or before five years before the date of initial date of application for Medicaid.

t. Bureau of Indian Affairs tribal census record of the Navaho Indians showing his or her place of birth and that was created on or before five years before the date of initial date of application for Medicaid.

u. U.S. State Vital Statistics official notification of birth registration

showing his or her place of birth and that was created on or before five years before the date of initial date of application for Medicaid.

v. An amended U.S. public birth record that was amended after he or she turned 5 years of age, that shows his or her place of birth and that was created on or before five years before the date of initial date of application for Medicaid.

w. Statement signed by the physician or midwife who was in attendance at the time of his or her birth, that shows his or her place of birth and that was created on or before five years before the date of initial date of application for Medicaid.

x. Institutional admission papers from a nursing home, skilled nursing care facility or other institution that show his or he place of birth and that was created on or before five years before the date of initial date of application for Medicaid.

y. A record from a clinic, doctor or hospital that is not an immunization record but that shows his place of birth and that was created on or before five years before the date of initial date of application for Medicaid.

32. With respect to each of the following documents and to the best of my knowledge, each Ward possesses neither an original of such a document nor a copy of such a document certified by the original issuing agency, whether valid or expired, if applicable. Furthermore and to the best of my knowledge, each Ward is incapacitated

and cannot obtain either an original document nor a copy of such a document certified by the original issuing agency within forty-five (45) days from the date of request, or within any reasonable period of time:

    a. Certificate of Degree of Indian Blood, or other U.S. American Indian / Alaska Native tribal document.

    b. School identification card with his or her photograph.

    c. U.S. military card or draft record.

    d. Identification card issued by a Federal, State, or local government that includes the same information included on State driver's licenses.

    e. Military dependent's identification card.

    f. Native American tribal document

    g. U.S. Coast Guard Merchant Mariner card.

33. To the best of my knowledge, each Ward does not know or have available two (2) individuals that have personal knowledge of his or her birth in the United States of America.

34. To the best of my knowledge, because of his or her incapacity, even with my assistance, each Ward cannot provide the information necessary to enable me to acquire the necessary aforementioned documents.

35. When I attempted to procure an original or certified copy of a birth certificate for those Wards reported to have been born in Maryland or Virginia, my attempts were unsuccessful because the department of Vital Statistics in these jurisdictions required knowledge of the mother's maiden name and the father's name,

neither of which the Ward was able to provide. An additional barrier to obtaining birth certificates is the cost of such inquiries, which is $23.00 in Washington, D.C. Such a fee is onerous, comprising nearly one-third of the monthly spending money for those Wards whose personal needs allowance is only $70.00 per month. At least one Ward has no such income.

36.   It is my understanding that, because each Ward does not possess and/or cannot obtain any of the documents as stated above, and further because he or she does not know two (2) individuals that have personal knowledge of his or her date and place of birth, and further as a result of the Defendants' impending actions, each Ward's Program eligibility will be terminated.

37.   As a result of the Defendants' impending actions, each Ward's health status will quickly, irreparably and irreversibly decline.

*[signature]*

Andrea J. Sloan, R.N., Esq.
1350 Beverly Road, #115-232
McLean, VA 22101